UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                    :
NA'EEM SANTIAGO,                    :
                                    :
        Petitioner,                 :   Civ. No. 12-2105 (NLH)
                                    :
    v.                              :   OPINION
                                    :
CHARLES WARREN, et al.,             :
                                    :
        Respondents.                :
_____:

APPEARANCES:
Na'eem Santiago, #405131 / 983272
New Jersey State Prison
P.O. Box 861
Trenton, NJ
    Petitioner, pro se

Mario C. Formica, Esq.
Atlantic County Prosecutor's Office
4997 Unami Boulevard
Mays Landing, NJ 08201
    Counsel for Respondents


HILLMAN, District Judge

    This matter is before the Court pursuant to Petitioner

Na'eem Santiago's submission of a Petition (ECF No. 1) for writ

of habeas corpus, under 28 U.S.C. § 2254, challenging his state

court conviction for felony murder and related offenses.  For

the reasons set forth below, the Petition will be DENIED.[1]

_____

[1] To the extent that Petitioner's claims are unexhausted, this
Court will deny them on the merits pursuant to 28 U.S.C. §
2254(b)(2) ("An application for a writ of habeas corpus may be
denied on the merits, notwithstanding the failure of the
applicant to exhaust the remedies available in the courts of the
State"). See Carrascosa v. McGuire, 520 F.3d 249, 255 n. 10 (3d

I.   FACTUAL BACKGROUND and PROCEDURAL HISTORY

A discussion of the factual and procedural background of this case is set forth in the state appellate court's decision on Petitioner's appeal of post-conviction relief:

> Defendant was convicted of murdering Vaughn Rollins on the evening of October 22, 1996, when defendant was sixteen years old.  Defendant obtained the murder weapon from Rollins' cousin, Stephon Duggan, who testified that he specifically told defendant and his co-defendant not to harm Rollins when defendant said he was going to "rob a couple of people."  Duggan testified that after the murder, he spoke with defendant who told him the killing was an accident.
>
> Rollins was sitting in his car counting money when he was shot in the chest at close range by a man in a ski mask.  Fifteen-year-old Joel Townsel, who was sitting on a porch in front of Rollins' car, testified he saw a man put on a ski mask, demand money from Rollins and shoot Rollins when he refused to turn it over.  Townsel testified that, although he did not get a good look at the shooter, he picked out defendant's photograph from a photo array at the urging of the police. He did not identify defendant in court.
>
> After the murder, defendant visited Aaron McCoy, an older man with extensive experience in the criminal justice system.  McCoy testified that he told defendant to take a cab and throw the gun off a bridge

---

Cir. 2008) ("There is, however, a difference between granting an unexhausted habeas claim on the merits and denying such a claim on the merits, as recognized by the plain language of section 2254(b)(2) . . . Denying an unexhausted claim on the merits is consistent with the statute"); Taylor v. Horn, 504 F.3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of Taylor's claims on the merits, we need not address exhaustion"); Bronshtein v. Horn, 404 F.3d 700, 728 (3d Cir. 2005) ("We would permit Bronshtein to attempt on remand to establish a reason to excuse his procedural default, but we find it unnecessary to do so because it is apparent that the claims in question lack merit.  Under 28 U.S.C. § 2254(b)(2), we may reject claims on the merits even though they were not properly exhausted, and we take that approach here").

into the river.  McCoy said he called a cab for
defendant.

Three days after the murder, defendant told two young
women in Philadelphia not to mention that they had
seen him because the police "were trying to put a body
on him."  Defendant was arrested a year and a half
later.

State v. Santiago, No. A-2015-09T3, 2011 WL 890774, at *1 (N.J.

Super. Ct. App. Div. Mar. 16, 2011).

Petitioner was tried with his codefendant, Jamal Muhammad.

After a jury trial, Petitioner was convicted in February, 2000,

of: third-degree unlawful possession of a weapon, N.J. STAT. ANN.

2C:39-5b (count one); second-degree possession of firearms with

an unlawful purpose, N.J. STAT. ANN. 2C:39-4a (count two); first-

degree robbery, N.J. STAT. ANN. 2C:15-1 (count three); felony

murder, N.J. STAT. ANN. 2C:11-3a(3) (count four); murder, N.J.

STAT. ANN. 2C:11-3a(1)(2) (count five); and conspiracy, N.J.S.A.

2C:5-2 (count six).

On March 31, 2000, Petitioner was sentenced:

The judge merged the felony murder conviction into the
murder conviction, and sentenced defendant to life in
prison, with a minimum parole ineligibility period of
thirty years.  [The] Judge [] also imposed a
consecutive, twenty-year sentence with a ten-year
parole ineligibility period for the robbery
conviction.  Defendant received concurrent sentences
for the remaining convictions.

In the aggregate, defendant received a life sentence
plus twenty years, and was required to serve a minimum
of forty years before becoming eligible for parole.
He was sixteen-years-old when the crimes were
committed, and twenty-years-old when he was sentenced.

State v. Santiago, No. A-2064-13T1, 2015 WL 4411352, at *1 (N.J.
Super. Ct. App. Div. July 21, 2015).

Petitioner filed a direct appeal and the state appellate
division affirmed the convictions. State v. Santiago, No. A-
4881-99 (N.J. Super. Ct. App. Div. July 9, 2001).  The New
Jersey Supreme Court denied certification. State v. Santiago,
170 N.J. 210, 785 A.2d 438 (2001).

Petitioner then applied for post-conviction relief ("PCR").
However, it is unclear when, exactly, Petitioner filed for that
relief.  It appears that Petitioner filed one pro se application
in 2003, see (Pro Se Notice of Petition, Resp't's Ex. 13, Aug.
10, 2003, ECF No. 18-13), and another in 2004, see Santiago,
2011 WL 890774, at *1; (Pro Se Notice of Petition, Resp't's Ex.
14, Nov. 22, 2004, ECF No. 18-14).  However, Petitioner's PCR
application was not filed and addressed by the PCR court for
nearly five years, and no explanation for this delay is present
in the record. See, e.g., Santiago, 2011 WL 890774, at *1 n.1
("The delay of almost five years in hearing defendant's PCR
application is not explained in the record.").  On September 24,
2009, assigned PCR counsel filed a brief in support of
Petitioner's PCR application. (PCR Br., Resp't's Ex. 15, Sept.
24, 2009, ECF No. 18-15).  Petitioner then filed another pro se
brief in support of PCR, the State filed a responsive
submission, and the PCR court heard oral argument on the

4

application.  In an oral opinion on October 23, 2009, the PCR
court denied Petitioner's application. (PCR Tr., Resp't's Ex.
17, Oct. 23, 2009, ECF No. 18-17).  An appropriate order
followed. (PCR Order, Resp't's Ex. 18, Oct. 23, 2009, ECF No.
18-18).

Petitioner appealed, and the state appellate court affirmed
the decision of the PCR court. Santiago, 2011 WL 890774, at *4.
The New Jersey Supreme Court denied certification on December 1,
2011. State v. Santiago, 208 N.J. 600, 34 A.3d 782 (2011).
Petitioner filed the instant petition for writ of habeas corpus
under 28 U.S.C. § 2254 on or about April 2, 2012. (ECF No. 1).

In his Petition, he asserts nine grounds for relief.
Specifically, he alleges: (1) that the trial court erred by
failing to instruct the jury on the lesser-included offenses of
aggravated and reckless manslaughter; (2) ineffective assistance
of counsel due to his trial counsel's failure to accept the
trial court's offer to charge the jury on the lesser-included
offenses of aggravated manslaughter and reckless manslaughter;
(3) that the trial court's admission of an identification made
by witness Joel Townsel was unnecessarily suggestive; (4)
ineffective assistance of counsel due to trial counsel's failure
to move for a Wade hearing to bar the out-of-court
identification of Joel Townsel; (5) ineffective assistance of
counsel due to trial counsel's failure to argue that the court

5

erred in explaining to the jury the mens rea required for a robbery conviction; (6) ineffective assistance of counsel due to trial counsel's failure to object to the hearsay testimony of Kenneth Howard, to ask for a limiting instruction on the use of other-crimes evidence, and to object to "subsequent inadequate instructions;" (7) ineffective assistance of counsel due to trial counsel's failure to object to the jury instruction on the robbery offense; (8) ineffective assistance of counsel due to trial counsel's failure to move for dismissal of the robbery and felony murder counts; and (9) that the trial court violated the Supreme Court's holding in <u>Brady</u>.

Respondents filed their Answer on February 25, 2014. (ECF No. 18).  Petitioner was granted three extensions of time in which to submit his Traverse, which was filed on September 15, 2014. (ECF No. 27).  This matter is now fully briefed and the Court has considered all submissions by the parties.

## II.   <u>STANDARDS OF REVIEW</u>

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000) (O'Connor, J., for the Court, Part II).  A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new

context where it should not apply or unreasonably refuses to
extend that principle to a new context where it should apply,"
(although the Supreme Court expressly declined to decide the
latter). Id. at 407-09.

To be an "unreasonable application" of clearly established
federal law, the state court's application must be objectively
unreasonable. See id. at 409.  In determining whether the state
court's application of Supreme Court precedent was objectively
unreasonable, a habeas court may consider the decisions of
inferior federal courts. See Matteo v. Superintendent, 171 F.3d
877, 890 (3d Cir. 1999).

The deference required by § 2254(d) applies without regard
to whether the state court cites to Supreme Court or other
federal case law, "as long as the reasoning of the state court
does not contradict relevant Supreme Court precedent." Priester
v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v.
Packer, 537 U.S. 3, 123 S. Ct. 362, 154 L.Ed.2d 263 (2002);
Woodford v. Visciotti, 537 U.S. 19, 123 S. Ct. 357, 154 L.Ed.2d
279 (2002)).

Finally, a pro se pleading is held to less stringent
standards than more formal pleadings drafted by lawyers. See
Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167
L. Ed. 2d 1081 (2007) (citing Estelle v. Gamble, 429 U.S. 97,
106, 97 S. Ct. 285, 50 L.Ed.2d 251 (1976)); Haines v. Kerner,

404 U.S. 519, 520, 92 S. Ct. 594, 30 L.Ed.2d 652 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989).

### III.  DISCUSSION

Because several of Petitioner's claims address similar subject matter and require similar analysis, this Court will address the grounds for relief not in the order presented in the Petition, but in an order which resolves each ground most efficiently and clearly.

A. GROUND ONE

As his first basis for relief, Petitioner asserts that the trial court erred by failing to instruct the jury on the lesser-included offenses of aggravated and reckless manslaughter.[2]  In Beck v. Alabama the Supreme Court held that, in a capital case, a trial court must give a requested charge on a lesser included offense where it is supported by the evidence. See 447 U.S. 625, 635, 100 S. Ct. 2382, 2389, 65 L. Ed. 2d 392 (1980); see also Gilmore v. Taylor, 508 U.S. 333, 360, 113 S. Ct. 2112, 2127, 124 L. Ed. 2d 306 (1993).  However, the Supreme Court did not

---

[2] To the extent this claim is unexhausted, it will nevertheless be denied on its merits. See 28 U.S.C. § 2254(b)(2); Carrascosa, 520 F.3d at 255 n.10.

resolve the question of whether instructions on lesser included offenses were required in non-capital cases. See id.

The Third Circuit held that trial courts must charge a lesser included offense so that the jury does not convict a defendant of a crime more serious than the jury believes the defendant actually committed merely because the jury believes the defendant had some degree of involvement and does not want to set the defendant free. See Vujosevic v. Rafferty, 844 F.2d 1023, 1027 (3d Cir. 1988) (citing Keeble v. United States, 412 U.S. 205, 212–13, 93 S. Ct. 1993, 1998, 36 L. Ed. 2d 844 (1973)).  In a subsequent case the Third Circuit observed that, since it is unclear whether due process requires instruction on a lesser included offense in non-capital cases, a federal court should conduct its analysis with the relevant state law in mind. See Geschwendt v. Ryan, 967 F.2d 877, 884 n.13 (3d Cir. 1992) (relying on Schad v. Arizona, 501 U.S. 624, 111 S. Ct. 2491, 115 L. Ed. 2d 555 (1991)).

New Jersey law provides that an instruction as to a lesser offense is warranted only where the facts provide a rational basis for such a conviction. See N.J. STAT. ANN. § 2C:1-8 ("The court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense."); State v. Brent, 137 N.J. 107, 644 A.2d 583 (1994) (holding that a

defendant is entitled to instruction on lesser included offense supported by evidence regardless of whether charge is consistent with theory of defense).

In this case, the trial court offered to charge lesser-included offenses, and it is apparent from the record that Petitioner and trial counsel made a strategic decision to decline this offer.  Unlike the circumstances present in Brent, Petitioner in this case explicitly requested not to be charged with the lesser-included offenses.  As the appellate court noted on review of Petitioner's PCR application, Petitioner "concede[d] that he agreed with trial counsel not to request a lesser charge because trial counsel told him it would be inconsistent with his defense of innocence." Id.; see also (Trial Tr. 90:14 – 91:1, Resp't's Ex. 6, Feb. 23, 2000, ECF No. 18-6).

In addition, "a trial court must be sensitive to the potential that charging lesser-included offenses could prejudice a defense to the more serious charges." State v. Perry, 124 N.J. 128, 590 A.2d 624 (1991).  Petitioner's "defense at trial was that he did not shoot Rollins." Santiago, 2011 WL 890774, at *3. Therefore, if the trial court had insisted on charging a lesser-included offense over Petitioner's objection to same, it may have prejudiced Petitioner's chances of being acquitted of murder by emphasizing Petitioner's presence at the scene or

requiring counsel to abandon his chosen strategy.  As the PCR judge noted, "[i]t would be inconsistent with the defense of identification [that Petitioner was not the one who shot the victim] and the fairness of the proceedings in that it would give the jury an opportunity to consider a lesser-included offense where there's nothing in the record to justify it." (PCR Tr. 29:2-6, Resp't's Ex. 17, Oct. 23, 2009, ECF No. 18-17). This Court agrees that, given the circumstances of the case and Petitioner's chosen defense strategy, the trial court was not obligated to instruct with respect to lesser-included offenses against Petitioner's wishes.

Finally, as set forth above, the Supreme Court has not conclusively addressed whether due process requires instruction on a lesser included offense in non-capital cases.  "[The Supreme] Court has held on numerous occasions that it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. 111, 122, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251 (2009) (citation and internal quotation marks omitted). Further, "[o]ther circuits have held that the failure to give lesser included offense instructions in a non-capital case does not present a constitutional question." Peoples v. Cathel, No. 05-5916, 2006 WL 3419787, at *7 (D.N.J. Nov. 21, 2006)

(collecting cases).  Therefore, even if the state court decisions in Petitioner's case were erroneous — which this Court does not find — any error did not involve an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. See, e.g., St. Fleur v. Ricci, No. 10-0864, 2012 WL 194345, at *10 (D.N.J. Jan. 17, 2012); Peoples, 2006 WL 3419787, at *8; see also Porter v. Brown, No. 04-4415, 2006 WL 2640624, at *9 (D.N.J. Sept. 12, 2006) ("The decision of the trial court not to give certain instructions should be constitutionally upheld unless the facts clearly indicate the appropriateness of an unrequested charge, since a trial court does not have the obligation on its own meticulously to sift through the entire record in every murder trial to see if some combination of facts and inferences might rationally sustain a manslaughter charge.") (citations and quotations omitted).  Petitioner is not entitled to habeas relief on this claim.

B. GROUND THREE

As his third ground for relief, Petitioner asserts that the state court's ruling that the admission of the out-of-court identification made by Joel Townsel was not unnecessarily suggestive was contrary to clearly established federal law.[3]

_____

[3] The Court notes that Ground Three of the Petition is inextricably tied to Petitioner's Ground Four, in which

Petitioner is not entitled to federal habeas relief on this claim.

As an initial matter, during trial Petitioner did not challenge Townsel's out-of-court identification as unnecessarily suggestive. Indeed, in Ground Four of this Petition, Petitioner asserts that his trial counsel was ineffective for failing to make this challenge during trial by requesting a Wade hearing. Therefore, it is unclear to this Court how Petitioner can argue that the state court made an affirmative ruling on this issue which was contrary to clearly established federal law.

Petitioner raised this claim in the context of plain error on direct appeal. In addressing this argument, the state appellate court noted that Petitioner did not object to Townsel's testimony during trial, and summarily rejected Petitioner's claim. (Op. on Direct Appeal 11, Resp't's Ex. 11, July 9, 2001, ECF No. 18-11) ("Using that measuring stick [of plain error], we see nothing that would warrant reversal.").

---

Petitioner asserts that his trial counsel was ineffective for failing to request a Wade hearing to suppress Townsend's out-of-court identification of Petitioner. (Pet. 25, ECF No. 1); see also United States v. Wade, 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967). Several times in the supporting facts section of Petitioner's Ground Three he asserts that his "trial counsel was ineffective for failing to move for a Wade hearing." (Pet. 24, 25, ECF No. 1). Nevertheless, in an effort to construe the pro se petition liberally as this Court must, see Royce, 151 F.3d at 118, the Court has distinguished these two claims and will address them separately.

In the instant federal habeas petition, Petitioner does not cite to any clearly established federal law which requires that a trial court must <u>sua sponte</u> challenge an out-of-court identification, or conduct a <u>Wade</u> hearing, in the absence of such a challenge or request by a defendant at trial.  Further, this Court's review of relevant Supreme Court precedent suggests that a state trial court has no such obligation.  In <u>Watkins v. Sowders</u>, the Supreme Court stated that "under our adversary system of justice, cross-examination has always been considered a most effective way to ascertain truth." 449 U.S. 341, 349, 101 S. Ct. 654, 659, 66 L. Ed. 2d 549 (1981).  Relying on the "time-honored process of cross-examination as the device best suited to determine the trustworthiness of testimonial evidence[,]" the Supreme Court explicitly rejected the notion that a state criminal court is compelled to conduct a hearing in every instance where the propriety of identification procedures has been questioned by a defendant. <u>Id.</u>

In light of the Supreme Court's holding in <u>Watkins</u>, this Court cannot conclude the state trial court in this case was compelled to <u>sua sponte</u> conduct a hearing where no challenge to the propriety of the identification procedure had been made. Moreover, Petitioner in this case had the opportunity to challenge the trustworthiness of Townsel's testimony via the

"time-honored process of cross-examination.⁴" Id.  Because there

was no due process violation, and no unreasonable application of

clearly established federal law, Petitioner is not entitled to

federal habeas relief on this claim.

C. GROUND NINE

As his final ground for federal habeas relief, Petitioner

relies on the Supreme Court's decision in Brady v. Maryland, 373

U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).  The Third

Circuit recently explained the application of Brady in the

context of a federal habeas corpus petition:

> Prosecutors have an affirmative duty "to disclose
> [Brady] evidence ... even though there has been no
> request [for the evidence] by the accused," which may
> include evidence known only to police. Strickler v.
> Greene, 527 U.S. 263, 280, 119 S. Ct. 1936, 144
> L.Ed.2d 286 (1999); Kyles, 514 U.S. at 438, 115 S. Ct.
> 1555.  To comply with Brady, prosecutors must "learn
> of any favorable evidence known to the others acting
> on the government's behalf ..., including the police."
> Strickler, 527 U.S. at 281, 119 S. Ct. 1936 (internal
> quotation marks omitted) (quoting Kyles, 514 U.S. at
> 437, 115 S. Ct. 1555).
>
> To prove a Brady violation, a defendant must show the
> evidence at issue meets three critical elements.
> First, the evidence "must be favorable to the accused,

---

⁴ Although Petitioner did not cross-examine Townsel during trial,
the state appellate court noted on direct appeal that Townsel's
own direct "testimony certainly challenged the validity of the
photo identification.  Indeed the testimony could be viewed as
substantially benefitting Santiago." (Op. on Direct Appeal 11,
Resp't's Ex. 11, July 9, 2001, ECF No. 18-11).  This further
supports the conclusion that Petitioner is not entitled to
federal habeas relief based on the state trial court's failure
to sua sponte question the propriety of the identification made
by Townsel.

either because it is exculpatory, or because it is impeaching." Id. at 281–82, 119 S. Ct. 1936; see also United States v. Bagley, 473 U.S. 667, 676, 105 S. Ct. 3375, 87 L.Ed.2d 481 (1985) ("Impeachment evidence ..., as well as exculpatory evidence, falls within the Brady rule."). Second, it "must have been suppressed by the State, either willfully or inadvertently." Strickler, 527 U.S. at 282, 119 S. Ct. 1936. Third, the evidence must have been material such that prejudice resulted from its suppression. Id.; see also Banks, 540 U.S. at 691, 124 S. Ct. 1256. The "touchstone of materiality is a 'reasonable probability' of a different result." Kyles, 514 U.S. at 434, 115 S. Ct. 1555. Materiality "does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal ... [Rather], [a] 'reasonable probability' of a different result is ... shown when the government's evidentiary suppression undermines confidence in the outcome of the trial." Id. (internal quotation marks omitted).

Dennis v. Sec'y, Pennsylvania Dep't of Corr., No. 13-9003, 2016 WL 4440925, at *14 (3d Cir. Aug. 23, 2016).

In his Petition, Petitioner asserts that "the state court's ruling that the state did not violate Brady by failing to disclose the prior conviction of armed robbery for its witness Aaron McCoy was contrary to clearly established federal law and an unreasonable application of federal law . . ." (Pet. 31, ECF No. 1). Petitioner raised this issue on direct appeal. In ruling on this issue, the state appellate court stated

Santiago complains that the State failed to disclose in advance of trial that Aaron McCoy had a prior conviction for armed robbery. The State admits the failure; the existence of that conviction did not come out until McCoy took the stand and testified. There is no allegation, let alone demonstration, however,

17

> that the omission was the product of misconduct or bad
> faith on the part of the State.
>
> While this information should certainly have been made
> available in advance of trial, we cannot avoid noting
> that the jury was fully apprised of McCoy's extensive
> criminal background.  It strikes us as somewhat
> tenuous that the revelation of one more conviction
> would have tilted the balance of its assessment of
> McCoy's credibility.  We note, moreover, that there
> was no complaint at trial of this omission and no
> request for a continuance.  Santiago even used this
> conviction to his advantage in summation.  The
> omission provides no basis, on balance, to overturn
> these convictions.

(Op. on Direct Appeal 9-10, July 9, 2001, ECF No. 18-11)

(citation omitted).

As an initial matter, there is nothing before the Court to
suggest that McCoy's undisclosed conviction for armed robbery
was "exculpatory or impeaching" beyond the fact of conviction.
Next, as the state appellate court noted, there is nothing to
suggest that the conviction was intentionally suppressed by the
prosecution.  Moreover, the jury was fully apprised by the
prosecution of McCoy's multiple other conditions and,
ultimately, the jury was informed of his armed robbery
conviction.  Finally, as the state appellate court noted,
Petitioner used McCoy's undisclosed conviction to his advantage
by attacking his credibility during closing summations. (Trial
Tr. 35:19 – 36:4; Closing Argument, ECF No. 18-7).  Therefore,
there is nothing in the record to suggest that advanced

18

disclosure of this particular conviction would have had any
impact on the outcome of Petitioner's trial.

Given these circumstances, this Court cannot conclude that
the state court's rejection of this claim was contrary to, or an
unreasonable application of, clearly established federal law.
Accordingly, Petitioner is not entitled to habeas relief on this
claim.

D. Ineffective Assistance of Counsel Claims

Petitioner's Ground 2, and Grounds 5-8 are based on his
assertion that he was denied his Sixth Amendment right to
effective assistance of counsel.

1. Standard of Review

The Counsel Clause of the Sixth Amendment provides that a
criminal defendant "shall enjoy the right ... to have the
Assistance of Counsel for his defence." U.S. Const. amend. VI.
The right to counsel is "the right to effective assistance of
counsel." McMann v. Richardson, 397 U.S. 759, 771 n.14, 90 S.
Ct. 1441, 25 L.Ed.2d 763 (1970) (emphasis added) (citations
omitted), cited in Ross v. Varano, 712 F.3d 784, 797 (3d Cir.
2013).

To prevail on a claim of ineffective assistance of counsel,
a habeas petitioner must show both that his counsel's
performance fell below an objective standard of reasonable
professional assistance and that there is a reasonable

probability that, but for counsel's unprofessional errors, the outcome would have been different. Strickland v. Washington, 466 U.S. 668, 687, 694, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984). With respect to the "performance" prong, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.  With respect to the "prejudice" prong, a "reasonable probability" of prejudice is "a probability sufficient to undermine confidence in the outcome." Strickland at 694.  Thus, counsel's errors must have been "so serious as to deprive the defendant of ... a trial whose result is reliable." Id. at 687. The performance and prejudice prongs of Strickland may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." Id. at 697.

There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.  As a general matter, strategic choices made by counsel after a thorough investigation of the facts and law are "virtually unchallengeable," though strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. at 690-91; see also Marshall v. Cathel, 428 F.3d 452, 462-63 (3d Cir.

2005).  If counsel has been deficient in any way, however, the
habeas court must determine whether the cumulative effect of
counsel's errors prejudiced the defendant within the meaning of
<u>Strickland</u>.

    2. <u>GROUND TWO</u>

    As his second ground for habeas relief, Petitioner asserts
that he was denied effective assistance of counsel because his
trial counsel failed to accept the trial court's offer to charge
the jury on the lesser-included offenses of aggravated
manslaughter and reckless manslaughter. (Pet. 22-23, ECF No. 1).
Specifically, Petitioner states that he was misled by his
attorney that, "even if petitioner was to be found guilty [of
murder], he could only be sentenced to the lesser-included
offense based on the evidence presented at trial." (<u>Id.</u> at 22).
Moreover, Petitioner asserts that the evidence elicited at trial
suggested that the shooting was an accident; therefore, his
counsel could have "maintained a general denial of guilt defense
. . . and the trial court would have been obligated to instruct
the jury on the lesser-included offenses in a manner which
preserved petitioner's defense." (<u>Id.</u> at 23).

    The appellate division analyzed this issue in reviewing
Petitioner's PCR petition.  In doing so, the PCR appellate court
first noted that Petitioner's "defense at trial was that he did
not shoot Rollins." <u>Santiago</u>, 2011 WL 890774, at *3.  Indeed,

Petitioner "concede[d] that he agreed with trial counsel not to request a lesser charge because trial counsel told him it would be inconsistent with his defense of innocence." Id.; see also (Trial Tr. 90:14 – 91:1, Resp't's Ex. 6, Feb. 23, 2000, ECF No. 18-6).  Indeed, the fact that Petitioner agreed to proceed without lesser-included offenses undercuts Petitioner's assertion that trial counsel's performance was somehow deficient.  "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions.  Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant." Strickland, 466 U.S. at 691.

The appellate court then noted that Petitioner "was convicted of felony murder . . . and [under New Jersey statute], 'manslaughter is not a lesser included offense of felony murder.'" Santiago, 2011 WL 890774, at *3 (quoting State v. Pennington, 273 N.J. Super. 289, 298, 641 A.2d 1085, 1090 (App. Div. 1994)).  Under New Jersey law, felony murder occurs where a death is caused "when the actor, acting either alone or with one or more other persons, is engaged in the commission of, or an attempt to commit, or flight after committing or attempting to commit robbery, sexual assault, arson, burglary, kidnapping,

22

carjacking, criminal escape or terrorism . . ." N.J. Stat. Ann. § 2C:11-3(a)(3).  The state appellate court reasoned that

> Even if the jury thought defendant recklessly killed Rollins during the course of the robbery, defendant would still be guilty of felony murder.  Therefore, even if the trial court had charged aggravated or reckless manslaughter, and even if the jury had found defendant guilty of one of these lesser crimes instead of murder in count five of the indictment, defendant would still have been convicted of felony murder in count four.

Santiago, 2011 WL 890774, at *3.

It can be inferred from statements above that the appellate court found that, even if his counsel had performed deficiently, Petitioner was not prejudiced by the failure to request lesser-included offenses because Petitioner would still have been convicted of felony murder — and Petitioner's conviction for murder was merged with his conviction for felony murder for sentencing purposes.  Thus, even accepting as true Petitioner's assertion that he was misled by trial counsel into believing that if he was "found guilty [of murder], he could only be sentenced to the lesser-included offense" (Pet. 22, ECF No. 1), Petitioner still would have been sentenced on the felony murder conviction.

This Court agrees that even if Petitioner had been charged with lesser-included offenses, the fact remains that he was still convicted on the first-degree robbery charge and, as a corollary, on the felony murder charge.  A review of the record

23

does not permit this Court to conclude that a manslaughter charge would have led the jury to find Petitioner guilty of a lesser offense and not guilty of felony murder.  Accordingly, even assuming Petitioner's counsel misled him regarding how he would be sentenced for the murder charge — which this Court does not find — Petitioner was not prejudiced by this misinformation because he still would have been convicted of, and sentenced on, the felony murder charge.[5] See Werts v. Vaughn, 228 F.3d 178, 204 (3d Cir. 2000) (holding no prejudice under Strickland where the result of the proceeding would not have been different).  In the absence of any prejudice, Petitioner cannot, under Strickland, establish that he was deprived of the effective assistance of counsel as to this issue.  Thus, the appellate division's denial

---

[5] The Court notes that Petitioner does not assert that he would have altered his entire trial strategy had he known he could have been sentenced on a murder conviction, and not just on lesser-included offenses.  In fact, Petitioner contends that he "could have maintained a general denial of guilt defense, . . . and the trial court would have been obligated to instruct the jury on the lesser-included offenses in a manner which preserved petitioner's defense." (Pet. 23, ECF No. 1).  Regardless, as set forth below, this Court finds that the state court's affirmation of the PCR court's decision that trial counsel's performance was objectionably reasonable was not an unreasonable application of Strickland. See Rolan v. Vaughn, 445 F.3d 671, 681-82 (3d Cir. 2006) ("Strickland and its progeny make clear that counsel's strategic choices will not be second-guessed by post-hoc determinations that a different trial strategy would have fared better." (citing Strickland, 466 U.S. at 689)).

of this claim was neither contrary to nor an unreasonable application of Strickland, and Petitioner is not entitled to federal habeas relief on this claim.

Moreover, the appellate court summarily affirmed the decision of the PCR court and found that Petitioner had not met his burden of demonstrating ineffective assistance of counsel under Strickland. Santiago, 2011 WL 890774, at *3. Part of the PCR court's reasoning in rejecting this ineffective assistance claim was that "trial counsel would have been doomed in its defense theory had it argued that defendant . . . didn't do it, but if he did, he did it for love or he did it not for money. Therefore, the petitioner, it is alleged, was not denied effective assistance because to do so on that issue would've been arguing for something inconsistent." (PCR Tr. 31:18-25, Resp't's Ex. 17, Oct. 23, 2009, ECF No. 18-17).

Considering Petitioner's asserted defense, this Court agrees that trial counsel's failure to request a lesser-included offense charge was a strategic decision that did not amount to ineffective assistance. Specifically, as the PCR judge observed, a request for a lesser-included offense would have directly contradicted Petitioner's asserted defense theory at trial. Id. Therefore, contrary to Petitioner's assertion, it would have been impossible for Petitioner to "maintain[] a general denial of guilt defense . . . [and also have instructed

25

the jury] on the lesser-included offenses in a manner which preserved petitioner's defense." (Pet. 23, ECF No. 1); see also United States v. Ware, 595 F. App'x 118 (3d Cir. 2014) (finding that defense counsel's decision not to request lesser-included jury instruction was reasonable trial strategy because to do so would have been contrary to defense narrative that defendant had committed no crime); Archy v. Phelps, No. 11-905 (NLH), 2013 WL 326920, at *6 (D. Del. Jan. 28, 2013) ("Given this conflict between the defense theories and a lesser included offense instruction, and the possibility that the jury would have been confused by the presentation of such conflicting theories, the Court concludes that defense counsel reasonably opted against a lesser included offense instruction.").

Given these circumstances, this Court cannot determine that the state court's denial of this claim was an unreasonable application of Strickland.  The state court provided reasonable justification for its conclusion that trial counsel satisfied the deferential standards set forth in Strickland with respect to foregoing the lesser-included jury instruction. See Harrington v. Richter, 562 U.S. 86, 105, 131 S. Ct. 770, 788, 178 L.Ed.2d 624 (2011).  The state court's rejection of this claim is further supported by the fact that the record shows that Petitioner participated in the selection of this trial strategy. See Strickland, 466 U.S. at 691.  Accordingly, the

state court's determination that trial counsel was not
ineffective for failing to request a lesser-included jury
instruction was not an unreasonable application of Strickland.
As the Supreme Court observed, "[i]t is 'all too tempting' to
'second-guess counsel's assistance after conviction or adverse
sentence'." Richter, 562 U.S. at 105 (quoting Strickland, 466
U.S. at 689-90).

Petitioner is not entitled to habeas relief on this claim.
See Ware, 595 F. App'x 121 (finding no ineffective assistance
because attorneys had a strategic reason for not requesting a
lesser-included jury instruction even though the strategy was
unsuccessful); see also Scott v. Bartkowski, No. 11-3365, 2013
WL 4537651, at *24 (D.N.J. Aug. 27, 2013) (collecting cases)
("The denial of this claim was not an unreasonable application
of the Strickland standard as lesser included offenses would
have been completely inconsistent with petitioner's defense
theory at trial.").

    3. GROUND FOUR

As his fourth ground for relief, Petitioner asserts that he
was denied effective assistance of counsel because trial counsel
failed to move for a Wade[6] hearing.  A court in this district
recently explained:

───────────────

[6] United States v. Wade, 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed.
2d 1149 (1967).

> The purpose of a <u>Wade</u> hearing is to determine whether
> identification testimony should be suppressed because
> the manner in which the identification of the suspect
> was obtained was unduly suggestive. <u>United States v.
> Wade</u>, 388 U.S. 218, 242 (1967). "Suggestive
> confrontations are disapproved because they increase
> the likelihood of misidentification . . . ." <u>Neil v.
> Biggers</u>, 409 U.S. 188, 198 (1972). Significantly, the
> Supreme Court has ruled that, where "identifications
> were entirely based upon observations at the time of
> the [incident] and not at all induced by the conduct"
> of the pretrial identification procedures, the
> identification does not violate due process. <u>See
> Coleman v. Alabama</u>, 399 U.S. 1, 6-7 (1970).

<u>Herrill v. Ricci</u>, No. 10-3575, 2016 WL 1183176, at *18 (D.N.J.

Mar. 28, 2016), <u>certificate of appealability denied</u> (July 29,

2016).

Nevertheless, as discussed above, a <u>Wade</u> hearing is not

required in every case in which a defendant challenges out of

court identifications. <u>See Watkins</u>, 449 U.S. at 349.

Additionally, to show that he was prejudiced by counsel's

failure to seek a <u>Wade</u> hearing, a petitioner "must show that he

would likely have prevailed on [his] suppression motion and

that, having prevailed, there is a reasonable likelihood that he

would not have been convicted." <u>Thomas v. Varner</u>, 428 F.3d 491,

502 (3d Cir. 2005).

In this ground for relief, Petitioner challenges the

testimony and out-of-court identification made by Joel Townsel.

By way of background:

> Joel Townsel, who was sitting on a porch in front of
> Rollins' car, testified he saw a man put on a ski

> mask, demand money from Rollins and shoot Rollins when
> he refused to turn it over.  Townsel testified that,
> although he did not get a good look at the shooter, he
> picked out defendant's photograph from a photo array
> at the urging of the police.  He did not identify
> defendant in court.

Santiago, 2011 WL 890774, at *1.

Petitioner asserts that trial counsel should have requested a Wade hearing to suppress the out-of-court identification and testimony of Joel Townsel as unreliable; and that his failure to do so constituted ineffective assistance.  The state appellate court addressed this issue on review of the PCR court.  The appellate court noted that it had already "considered defendant's claim that the identification made by Joel Townsel was unnecessarily suggestive and should have been excluded on direct appeal, and therefore he may not raise the issue again [on appeal of PCR]." Santiago, 2011 WL 890774, at *2 (citation and quotations omitted).  The state appellate court then referred to its opinion denying Petitioner's direct appeal in which it noted that Townsel's direct "testimony certainly challenged the validity of the photo identification.  Indeed the testimony could be viewed as substantially benefitting Santiago." (Op. on Direct Appeal 11, Resp't's Ex. 11, July 9, 2001, ECF No. 18-11).  The state appellate court then summarily affirmed the PCR court's denial of this claim.

The oral opinion issued by the PCR judge helps to shed light on the connection between the appellate court's opinion on direct appeal — denying Petitioner's challenge to the admission of the out-of-court identification by Townsend — and the appellate court's opinion on appeal of PCR — denying Petitioner's claim of ineffective assistance due to trial counsel's failure to request a <u>Wade</u> hearing.  Specifically, the PCR judge stated:

> whether or not any alleged deficiency or failure to raise and to do the <u>Wade</u> hearing would have changed the outcome of this case, it appears that based on the totality of the rest of the evidence in the case and based on the Appellate Division finding that any error in the case does not constitute plain error and therefore, assuming arguendo, that therefore, they would say that if there was error, it was harmless error and, assuming arguendo, that their reading of the issue that the testimony could be viewed as substantially benefitting Santiago, it would appear that at least the second prong of the <u>Strickland/Fritz</u> determination would not have been met on that issue.

(PCR Op. 25-26, Resp't's Ex. 17, Oct. 23, 2009, ECF No. 18-17).

In other words, because the testimony that would hypothetically have been excluded as the result of a <u>Wade</u> hearing was actually beneficial to Petitioner, Petitioner cannot show that he suffered any prejudice under <u>Strickland</u> as a result of his trial counsel's failure to request the <u>Wade</u> hearing. This Court is in agreement.

As the appellate court noted on direct appeal,

> Townsel admitted in his testimony that prior to
> viewing the photo array he had heard that Santiago was
> responsible for the killing.  He testified "names was
> given to me during the time of the — the murder and
> everybody was so sure that it was that person that I
> just picked that picture out."  He also said that
> prior to viewing the pictures, he was told which
> picture displayed Santiago.

(Op. on Direct Appeal 10-11, Resp't's Ex. 11, July 9, 2001, ECF
No. 18-11).

Additionally, Townsel did not identify Petitioner in court
at trial.  Accordingly, the testimony given by Townsel served
mainly to cast doubt upon his out-of-court identification of
Petitioner and, indeed, his credibility in general.  Therefore,
even assuming Petitioner would have prevailed on his suppression
motion, Petitioner cannot show that there is a reasonable
likelihood that he would not have been convicted, and he has
failed to establish prejudice as a result of counsel's failure
to request a Wade hearing. See Thomas, 428 F.3d at 502.  Because
Petitioner has not demonstrated by a reasonable probability that
the outcome of the proceedings would have been different but for
his trial counsel's failure to request a Wade hearing, he is not
entitled to habeas relief on this claim.

### 4. GROUND FIVE

In Ground Five, Petitioner asserts that he received
ineffective assistance due to trial counsel's failure to
challenge the jury instruction regarding the mens rea required

for a conviction for robbery.  In support of this claim, Petitioner relies on the briefs submitted in support of PCR, (PCR Br. 26-31, Resp't's Ex. 16, ECF No. 18-16), as well as the arguments set forth in his Petition, (Pet. 27-28, ECF No. 1).

In his Petition, however, the supporting facts section relates only to the evidence presented at trial; specifically, evidence which Petitioner asserts suggests that the shooting was the result of a disagreement with the victim over Petitioner's girlfriend, and not the result of a robbery.  Petitioner argues that "trial counsel did not attempt to utilize the information elicited at trial, that the shooting was an 'accident' to refute the State's theory of a robbery, felony murder, and knowing and purposeful murder, to the jury." (Pet. 28, ECF No. 1).

Respondents contend that the claim asserted in Ground Five is identical to the claim asserted in Ground Seven.  Indeed, Petitioner's Ground Seven argues that he received ineffective assistance because his counsel did not "object to the trial court's instruction to the jury on the robbery offense where the court had transformed the requisite purposeful element to a knowing element[,] thereby lessening the culpability for conviction of first degree robbery." (Pet. 29, ECF No. 1).  The Court agrees that the caption for Ground Five and the caption for Ground Seven present similar, if not identical, claims.

Petitioner attempts to distinguish these claims in his Traverse, but it is clear that Petitioner is mistaken. (Traverse 9-10, ECF No. 27).  Petitioner is informed that the term "mens rea" refers to the mental intent required to commit a crime. Therefore, to the extent Petitioner's claim in Ground Five is that his counsel was ineffective for failing to challenge the jury instruction on the mens rea for robbery, this is the same as his claim in Ground Seven that his counsel was ineffective for failing to challenge the jury instruction on the "purposeful" and "knowing" element associated with the crime of robbery.

Nevertheless, in construing the Petition liberally as this Court must, see Royce, 151 F.3d at 118, it appears that Petitioner means to assert an ineffective assistance claim in Ground Five based on his counsel's failure to argue that the shooting occurred as a result of a dispute over Petitioner's girlfriend. See (Pet. 28, ECF No. 1) ("Trial counsel did not attempt to utilize the information elicited at trial, that the shooting was an 'accident' to refute the State's theory[.]"). Petitioner concedes that this claim is unexhausted. (Traverse 10, ECF No. 27) ("This issue was not ruled on in state court."). Nevertheless, it will be denied on the merits. See 28 U.S.C. § 2254(b)(2); Carrascosa, 520 F.3d at 255 n.10.

As explained in this Court's discussion denying Petitioner's Ground Two, supra, trial counsel's choice of trial strategy was objectively reasonable, and the record shows that Petitioner participated in the selection of this trial strategy. See Strickland, 466 U.S. at 691.  Contrary to Petitioner's assertions, he could not have maintained both a defense of total innocence, and a defense "that the shooting was an 'accident'." (Pet. 28, ECF No. 1).  If trial counsel had "utilize[d] information elicited at trial, that the shooting was an 'accident' to refute the State's theory" as Petitioner argues counsel should have in Ground Five, then counsel would have completely undermined Petitioner's defense theory. (Id.).  Not only would this information have placed Petitioner at the scene, it would essentially have conceded that Petitioner shot the victim, if only by accident.  It is contradictory for a defendant to argue both "I didn't do it" and "if I did it, I did it for this reason."  Counsel's reasonable decision not to undermine the chosen defense theory is not ineffective assistance.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

5. GROUND SIX

Under New Jersey Rule of Evidence 404(b), evidence of other crimes, wrongs, or acts is inadmissible to show that a person acted in conformity with those prior crimes, wrongs, or acts;

34

but "may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute." N.J.R.E. 404(b) ("Other Crimes Evidence").  Following a preliminary hearing at trial, the court permitted the admission of Other Crimes Evidence against Petitioner.  Specifically, the trial court allowed the State to elicit testimony from witnesses Kenneth Howard and Stephon Duggan about an earlier armed robbery incident involving Petitioner, his co-defendant, and Kenneth Howard (the "Howard Robbery").

Petitioner's sixth ground for relief relates to evidence regarding the Howard Robbery which was admitted at trial under Rule 404(b).  In this claim, Petitioner asserts that his trial counsel was ineffective for: (1) failing to object to the hearsay testimony of Kenneth Howard; (2) failing to ask for a limiting instruction on the use of other-crimes evidence; and (3) failing to object to "subsequent inadequate instructions." (Pet. 29, ECF No. 1).

Petitioner raised this issue before the PCR court; however, it was not presented to the state appellate court on appeal of the PCR decision.  Accordingly, this claim is unexhausted. Regardless, it will be addressed and rejected on the merits. See 28 U.S.C. § 2254(b)(2); Carrascosa, 520 F.3d at 255 n.10.

In his Petition, Petitioner relies on his brief in support of PCR in support of this claim. (Pet. 29, ECF No. 1).  In Point VI of his PCR brief, Petitioner asserted that his counsel was ineffective for failing to object to an alleged hearsay statement made by Kenneth Howard at a preliminary hearing, and for failing to challenge "the jury instructions pertaining to N.J.R.E. 404(b) which allowed the State to elicit testimony about an earlier incident involving Kenneth Howard." (Br. in Support of PCR 42, Resp't's Ex. 15, ECF No. 18-15).

a. Hearsay Statements

With respect to the alleged hearsay, Petitioner asserts that his trial counsel should have objected to the following statements:

> MS. ANDREWS:  If that's the case, how do you know this is the one with the green eyes?
>
> KENNETH HOWARD:  I'm looking at him.
>
> MS. ANDREWS:  Somebody tell you?
>
> KENNETH HOWARD:  I'm looking at him and somebody . . . yeah, I heard it . . . yeah.  I mean you hear it.  People talk.

(Trial Tr. 13:23 - 14:3, Resp't's Ex. 4, Feb. 17, 2000, ECF No. 18-4).

As an initial matter, Petitioner concedes that these statements were not made in front of the jury, but during a preliminary hearing. (Id.).  Because these particular statements were not heard by the jury, they had no impact on the outcome of

the trial.  As the PCR court observed, "the jury did not hear that hearsay, [therefore], it could not have harmed the petitioner." (PCR Tr. 32:20-21, Resp't's Ex. 17, Oct. 23, 2009, ECF No. 18-17).  Absent a showing that these hearsay statements had any effect on the outcome of his trial, Petitioner has failed to satisfy that he suffered any prejudice under <u>Strickland</u>, and his ineffective assistance claim fails.

There are no arguments in the Petition, or in Petitioner's brief in support of PCR which establish that a failure to object to hearsay statements made during a preliminary hearing — outside the presence of the jury — rises to the level of a constitutional violation.  In his brief in support of PCR, Petitioner baldly asserts that "[t]rial counsel's performance was objectively unreasonable" and "had an objection [to the hearsay statements] been raised, evidence of the robbery involving Mr. Howard would have been barred." (Br. in Support of PCR 42, Resp't's Ex. 15, ECF No. 18-15).  These conclusory statements are wholly unsupported.  There is nothing in Petitioner's arguments, the record, or in the rules of evidence, to suggest that an objection to specific hearsay statements at the preliminary hearing would have barred all evidence of the Howard Robbery.[7]

---

[7] To the extent Petitioner means to assert that his trial counsel should have objected to the admission of the evidence of the

b. <u>Limiting Instructions</u>

Petitioner's claim that his trial counsel was ineffective for failing to object to the jury instructions pertaining to the Howard Robbery likewise fails.  In his brief in support of PCR, Petitioner argued that "by failing to ask for an instruction at the time the Howard robbery was testified to by Ken Howard and Stephon Duggan and by failing to object to the charge given at the time of the playing of Stephon Duggan's statement, trial counsel's performance was objectively unreasonable." (Br. in Support of PCR 42, Resp't's Ex. 15, ECF No. 18-15).  Petitioner further asserted that "[b]y failing to request a limiting instruction, the jury was able to convict the defendant based on the robbery of Mr. Howard." (<u>Id.</u>).  Finally, Petitioner stated that "the jury was able to learn of the past incident involving Kenneth Howard from Mr. Howard and Mr. Duggan when assessing the homicide crimes without any instruction being given. (<u>Id.</u> at 43-44).  These claims are without merit.

First, this Court notes — as did the PCR court and the state appellate court on direct appeal — that the trial court twice gave the jury a limiting instruction as to how the Other

---

Howard Robbery, in general, the Court notes that trial counsel did make a request to exclude all evidence of the Howard Robbery at the conclusion of the preliminary hearing. <u>See</u> (Trial Tr. 48:5-6, Resp't's Ex. 4, Feb. 17, 2000, ECF No. 18-4) ("Based on – all those factors, Judge, I would submit that this evidence should not be allowed.").

Crimes Evidence of the Howard Robbery could be used. <u>See</u> (Trial Tr. 84:19 – 86:13, Jury Charge, Resp't's Ex. 7, Feb. 24, 2000, ECF No. 18-7); <u>see also</u> (Op. on Direct Appeal 9, Resp't's Ex. 11, July 9, 2001, ECF No. 18-11); (PCR Tr. 33:8-11, Resp't's Ex. 17, Oct. 23, 2009, ECF No. 18-17).  Because a limiting instruction was, in fact, given at trial, Petitioner's counsel could not have been ineffective simply for failing to ask for one.

Furthermore, on direct appeal the state appellate court found both that the admission of evidence regarding the Howard Robbery was proper and that the limiting instructions regarding the Other Crimes Evidence were sufficient. (Op. on Direct Appeal 9, Resp't's Ex. 11, July 9, 2001, ECF No. 18-11).  Therefore, had Petitioner's trial counsel objected to the limiting instructions, any such objection would have failed.  Because counsel cannot be ineffective for failing to raise a meritless argument, <u>see</u> <u>Ross</u>, 672 F.3d at 211 n.9, Petitioner is not entitled to habeas relief on this claim.

### c. <u>Subsequent Inadequate Instructions</u>

As the final point to his Ground Six, Petitioner contends that his trial counsel was ineffective for failing to "object to subsequent inadequate instructions." (Pet. 29, ECF No. 1). While the contours of this argument are unclear, the Court gleans that Petitioner refers to the remaining arguments in his

brief in support of PCR.  Specifically, Petitioner alleged in
his PCR proceedings that "there was no agreement to rob [the
victim]" and that "the defendant indicated to Mr. Duggan that
the shooting was an accident." (Br. in Support of PCR 43,
Resp't's Ex. 15, ECF No. 18-15).  Presumably, then, Petitioner
means to assert in the instant Petition that trial counsel was
ineffective for failing to "incorporate[e] these facts into the
limiting instruction[.]" (Id.).  However, Petitioner provides no
support for his assertion that these facts should have been —
let alone could have been — incorporated into the jury
instruction; and common sense indicates that these alleged
"facts" had no place in the limiting instruction.

        First, with respect to Petitioner's complaint that "the
court failed to set forth that there was no agreement to rob
[the victim]," such an instruction would have been highly
improper, and would have directed a verdict in favor of
Petitioner, because Petitioner was charged with conspiracy to
commit robbery. (Id.).  Accordingly, this argument is
nonsensical and does not warrant further discussion.
Petitioner's counsel was not ineffective for failing to raise
this frivolous argument during trial.

        Next, Petitioner implies that the court should have set
forth in the jury charge "that the defendant indicated to Mr.
Duggan that the shooting was an accident." (Id.).  However, had

Petitioner's trial counsel attempted to introduce this evidence in a jury instruction, it would have undermined Petitioner's asserted defense.  Accordingly, this claim is subject to the same analysis as the ineffective assistance claims discussed above, and is denied for substantially the same reasons. Moreover, the jury heard the entirety of Mr. Duggan's testimony, including the statements regarding the shooting being an accident.  Petitioner has presented no reason why this particular piece of testimony should have been highlighted in a jury instruction.  Accordingly, Petitioner's counsel was not ineffective for failing to present this meritless argument at trial.  For the reasons state above, Petitioner is not entitled to habeas relief on this ground.

      6. <u>GROUND SEVEN</u>

As his seventh ground for relief, Petitioner asserts that he received ineffective assistance of counsel because his trial counsel failed to object to the trial court's instruction to the jury regarding the mental element required for a conviction for robbery. (Pet. 29, ECF No. 1).  Specifically, Petitioner asserts that the court "transformed the requisite purposeful element to a knowing element thereby lessening the culpability for a conviction of first degree robbery." (<u>Id.</u>).  Petitioner raised this argument in his PCR proceedings; however, he did not present this argument to the state appellate court upon review

of PCR.   Therefore, this claim is unexhausted.   Nevertheless, it
will be addressed and rejected on its merits. <u>See</u> 28 U.S.C. §
2254(b)(2); <u>Carrascosa</u>, 520 F.3d at 255 n.10.

     As set forth above, Petitioner cannot succeed on an
ineffective assistance of counsel claim unless he can show that
(1) his counsel's performance was deficient; and (2) the
deficient performance prejudiced his defense. <u>Strickland</u>, 466
U.S. at 687, 694.  Here, Petitioner asserts that his counsel was
deficient because he failed to object to the jury instruction
regarding the robbery charge.  Therefore, in order to determine
whether the allegedly deficient performance resulted in
prejudice, this Court must determine whether the jury
instruction on the robbery charge was erroneous and harmful.

     In this case, the trial court gave the following jury
instruction with respect to robbery:

> Under our law, a person is guilty of robbery if in the
> course of committing a theft he or somebody whose
> conduct he is responsible for or both knowingly
> inflicts bodily injury or uses force upon another, and
> for it to be an armed robbery the person must be . . .
> either armed with or uses or threatens the immediate
> use of a deadly weapon.
>
> A person is guilty of robbery if in the course of
> committing a theft he knowingly inflicts bodily injury
> or uses force upon another and is armed with or uses
> or threatens the immediate use of a deadly weapon.

(Trial Tr. 92:6-17, Jury Charge, Resp't's Ex. 7, Feb. 17, 2000,
ECF No. 18-7).

In his Petition, Petitioner asserts that "the additional element of 'knowingly' to the first-degree robbery instruction reduced the mental culpability or requirement from a 'conscious object' to cause serious bodily injury to 'awareness' that it was practically certain to result." (Pet. 30, ECF No. 1). Petitioner is mistaken.

As the PCR court pointed out, the New Jersey Supreme Court has ruled that "'knowledge' is the requisite mental state for the injury/force element of robbery[.]" State v. Sewell, 127 N.J. 133, 149, 603 A.2d 21, 29 (1992); see also (N.J. MODEL JURY CHARGE – ROBBERY, Resp't's Ex. 23, ECF No. 18-23).  Therefore, there was no error as a result of the use of "knowingly" in the jury instruction.

Although in his Traverse Petitioner attempts to distinguish between the crimes of first-degree robbery — for which he was charged — and second-degree robbery — the charge at issue in Sewell — his argument is unavailing. (Traverse 11-12, ECF No. 27).  In his Traverse, Petitioner emphasizes the use of the word "purposely" in the "grading" section of the New Jersey statute. Specifically, the statute states that

> [r]obbery is a crime of the second degree, except that it is a crime of the first degree if in the course of committing the theft the actor attempts to kill anyone, or purposely inflicts or attempts to inflict serious bodily injury, or is armed with, or uses or threatens the immediate use of a deadly weapon.

43

N.J. STAT. ANN. § 2C:15-1.

In focusing on the phrase "purposely inflicts or attempts to inflict serious bodily injury," Petitioner ignores the other clauses of the grading section of the statute, which are conjoined with the term "or;" namely, "or is armed with, or uses or threatens the immediate use of a deadly weapon." Id.

In this case, the jury found Petitioner guilty of third-degree unlawful possession of a weapon, second-degree possession of firearms with an unlawful purpose, and murder.  Therefore, it is evident that the jury believed that Petitioner was armed with a deadly weapon.  Indeed, the jury was instructed as to the meaning of "armed robbery" and "deadly weapon," and Petitioner does not object to those instructions. (Trial Tr. 95:2-18, Jury Charge, Resp't's Ex. 7, Feb. 17, 2000, ECF No. 18-7).  In light of the fact that Petitioner's robbery charge was elevated to first-degree robbery because Petitioner was armed with a deadly weapon, a jury instruction on the "purposeful" infliction of bodily injury was unnecessary.  The jury was properly instructed that Petitioner was guilty of robbery if, in the course of committing a theft, he knowingly inflicted bodily injury; and the robbery charge was upgraded to a first-degree crime because he was armed with a deadly weapon.  Because the jury instruction was proper, any objection or attempt by counsel to replace the word "knowingly" with "purposely" would have been futile.

Because counsel cannot be deemed ineffective for failing to raise a meritless claim, see Ross, 672 F.3d at 211 n.9, Petitioner is not entitled to federal habeas relief on this claim of ineffective assistance.

    7. GROUND EIGHT

    In his eighth ground for relief, Petitioner asserts that his trial counsel was ineffective for failing to move for the dismissal of the robbery and felony murder counts.  Respondents contend that this claims is unexhausted. (Br. in Opp. 27-28, ECF No. 18).  Petitioner responds that this issue was presented to the appellate court on appeal of PCR. (Traverse 12, ECF No. 27). The Court has reviewed Petitioner's briefs submitted in support of his appeal of the PCR court decision and is unable to conclude that Petitioner presented this argument to the state court on appeal of PCR.  Nevertheless, to the extent this claim is unexhausted, it will be rejected on the merits. See 28 U.S.C. § 2254(b)(2); Carrascosa, 520 F.3d at 255 n.10.

    As set forth above, Petitioner cannot succeed on an ineffective assistance of counsel claim unless he can show that (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced his defense. Strickland, 466 U.S. at 687, 694.  Here, Petitioner asserts that his counsel was deficient "for failing to move for the dismissal of the robbery and felony murder counts based on insufficient evidence, or the

verdict being against the weight of the evidence." (Pet. 31, ECF No. 1).  Therefore, in order to determine whether the allegedly deficient performance resulted in prejudice, this Court must determine whether there is any merit to Petitioner's argument that there was insufficient evidence to support a conviction for robbery or felony murder.

A sufficiency of the evidence claim is governed by Jackson v. Virginia, 443 U.S. 307, 318, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979).  "[I]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 — if the settled procedural prerequisites for such a claim have otherwise been satisfied — the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Id. at 324; accord McDaniel v. Brown, 558 U.S. 120, 121, 130 S. Ct. 665, 666, 175 L. Ed. 2d 582 (2010).

> [Jackson] requires a reviewing court to review the evidence in the light most favorable to the prosecution.  Expressed more fully, this means a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."

McDaniel, 130 S. Ct. at 673 (quoting Jackson, 443 U.S. at 326); see also House v. Bell, 547 U.S. 518, 538, 126 S. Ct. 2064, 165 L.Ed.2d 1 (2006) ("When confronted with a challenge based on

trial evidence, courts presume the jury resolved evidentiary
disputes reasonably so long as sufficient evidence supports the
verdict.").

The Supreme Court emphasized that "the standard ... does
not permit a court to make its own subjective determination of
guilt or innocence." Jackson 443 U.S. at 320, n.13.  Moreover,
"a reviewing court must consider all of the evidence admitted by
the trial court, regardless whether that evidence was admitted
erroneously." McDaniel, 130 S. Ct. at 672 (citation and internal
quotation marks omitted).  Additionally, "under Jackson, the
assessment of credibility of witnesses is generally beyond the
scope of review." Schlup v. Delo, 513 U.S. 298, 330, 115 S. Ct.
851, 130 L.Ed.2d 808 (1995).

In his Petition, Petitioner does not provide any factual
support for this claim, and instead refers to the "facts as
detailed in the briefs filed by his attorney, as well as those
he filed pro se . . ." (Id. at 30).  Indeed, Petitioner raised
this claim in Point Four of his pro se brief in support of PCR.
(ECF No. 18-16).  Specifically, Petitioner argued

> he could not be convicted of robbery because the
> aggravating circumstances were not present, that is,
> petitioner never threatened anyone or placed anyone in
> fear of bodily injury.  Under the State's theory,
> there was no evidence that petitioner had even
> committed attempted robbery because all of the
> elements of such an offense were not established,
> namely that in the course of (1) purposely taking a
> substantial step (2) to exercise unlawful control over

the property of another, petitioner (3) took a
substantial step (4) to threaten another with, or
place another in fear of, immediate bodily injury.

(Pro se PCR Br. 32, Resp't's Ex. 16, ECF No. 18-16).  Petitioner

then recited a version of the evidence and testimony adduced at

trial which, presumably, he believes supports his claim.

As an initial matter, the Court notes that the elements

listed in Petitioner's pro se brief in support of PCR are the

elements for the offense of attempted robbery, not robbery,

itself. See State v. Farrad, 164 N.J. 247, 258, 753 A.2d 648,

654 (2000).  Under New Jersey law,

A person is guilty of robbery if, in the course of
committing a theft, he:

(1) Inflicts bodily injury or uses force upon another;
    or

(2) Threatens another with or purposely puts him in
    fear of immediate bodily injury; or

(3) Commits or threatens immediately to commit any
    crime of the first or second degree.

N.J. STAT. ANN. § 2C:15-1(a).

The State's theory in this case was that Petitioner and his

co-defendant conspired to commit an armed robbery and that, in

the course of that robbery, Petitioner shot and killed the

victim.  Significant evidence adduced at trial supported this

theory.  Specifically, during trial Stephon Duggan testified

that Petitioner and his co-defendant came to him to get a gun

(Trial Tr. 64:24-25, Resp't's Ex. 4, Feb. 17, 2000, ECF No. 18-

4), which Petitioner's co-defendant immediately handed to
Petitioner (Id. at 72: 21-22).  Duggan further testified that
Petitioner and his co-defendant told him that "they was [sic]
going to rob a couple of people" and that one of the names
mentioned as a target was Vaughn Rollins, the victim.[8] (Id. at
73:11-15).

Additionally, Duggan testified that immediately after he
gave the gun to Petitioner and his co-defendant, they committed
a robbery in his presence.  Specifically, Duggan testified that
Petitioner brandished a knife against a boy on a bike.  Duggan
stated that he walked away so he did not witness the entire
robbery, but he confirmed that a few minutes later he saw
Petitioner with the boy's clothes and Petitioner's co-defendant
with the boy's bike. (Id. at 77:14-19).

Finally, at trial Joel Townsel testified that a man in a
ski mask "walked over to the car, and he pulled a gun out and
said give me your money." (Trial Tr. 50:23-24, Resp't's Ex. 5,
Feb. 22, 2000, ECF No. 18-5).

---

[8] In his pro se brief in support of PCR, Petitioner states that
Duggan testified that "there was no plan or agreement to rob or
shoot [the victim]." (Pro se PCR Br. 35, ECF No. 18-16).
However, this assertion is contradicted by the record.  Although
at first he could not remember, the record indicates that Duggan
later testified that Petitioner and his co-defendant referenced
the victim, Vaughn Rollins, as a potential target of their
intended robbery.

Accordingly, evidence was presented to the jury indicating that Petitioner acquired a gun for the purpose of committing robbery, that he specifically targeted Vaugh Rollins as a victim of the robbery, that Petitioner engaged in a theft, and that he shot the victim in the course of the robbery.  Thus, evidence existed at trial which could have satisfied the elements of robbery, even though the theft may have been unsuccessful. See Farrad, 164 N.J. at 258 ("[A] defendant can be convicted of robbery, even if the theft is unsuccessful, if he or she (1) purposely takes a substantial step (2) to exercise unlawful control over the property of another (3) while threatening another with, or purposely placing another in fear of, immediate bodily injury.").

Viewing the evidence adduced at trial in the light most favorable to the prosecution, this Court cannot conclude that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 324; accord McDaniel, 130 S. Ct. at 673.  Because Petitioner cannot demonstrate that the verdict was against the weight of the evidence or that insufficient evidence existed at trial to support a charge for robbery or felony murder, he cannot show prejudice as a result of his counsel's failure to raise these arguments.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

IV.  <u>CERTIFICATE OF APPEALABILITY</u>

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327, 123 S. Ct. 1029, 154 L.Ed.2d 931 (2003) (citation omitted), cited in <u>Eley v. Erickson</u>, 712 F.3d 837, 845 (3d Cir. 2013).

Here, jurists of reason would not disagree with this Court's resolution of Petitioner's claims.  No certificate of appealability will issue.

V.  <u>CONCLUSION</u>

For the reasons set forth above, the Petition for a Writ of Habeas Corpus under Title 28 U.S.C. § 2254 will be denied.  An appropriate Order follows.

__s/ Noel L. Hillman_____
NOEL L. HILLMAN
United States District Judge

Dated: September 29, 2016
At Camden, New Jersey